Argued and submitted April 21, affirmed June 16,
reconsideration denied August 5,
petition for review denied September 21, 1982 (293 Or 521)

SCHMELZER,
*Petitioner,*
*v.*
EMPLOYMENT DIVISION et al,
*Respondents.*

(No. 81-AB-1203, CA A22399)

646 P2d 650

David N. Hobson, Portland, argued the cause and filed the brief for petitioner.

Jan Peter Londahl, Assistant Attorney General, Salem, argued the cause for respondent Employment Division. With him on the brief were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Richard F. Gleason, Portland, argued the cause and filed the brief for respondent Tektronix, Inc.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

## THORNTON, J.

Claimant seeks review of the Employment Appeals Board's (Board) denial of unemployment benefits. She contends that she was willing to continue to work for Tektronix for an additional period of time but was not allowed to do so. OAR 471-30-038(2)(b).[1] The Board concluded that claimant had voluntarily left work.

Claimant worked as a keypunch operator from July 20, 1980, to May 22, 1981. On March 8, 1981, claimant was given a performance review which showed no substantial improvement in her work performance. Claimant became upset with the review and made several complaints about it. Worry, which she attributed to the performance review caused claimant to be ill periodically and miss work. On May 7, 1981, claimant's manager discussed the attendance problems and told the claimant she would be placed on probation. On May 12, 1981, claimant was put on written probation for absenteeism. On receiving the written notice on May 12, claimant told her department manager that she was going to quit. The parties then discussed what date claimant would formally terminate her position. The manager suggested May 22. Claimant suggested May 29 because she had a dental appointment on May 26 and wanted to be sure the company insurance would cover the expense. The manager told claimant that she would find out about the insurance coverage to see if it would extend to the end of May regardless of the actual date of termination.

The parties had no further discussion of the termination date until a May 21, 1981 meeting. There is a dispute between claimant and the manager concerning what was said at the May 21 meeting. The manager testified that she confirmed the insurance coverage and told

---

[1] OAR 471-30-038(2) provides:

"The distinction between voluntary leaving and discharge is:

"(a) If the employe could have continued to work for the same employer for an additional period of time the separation is a voluntary leaving of work.

"(b) If the employe is willing to continue to work for the same employer for an additional period of time but is not allowed to do so by the employer the separation is a discharge."

claimant that claimant would be covered under the company policy for the May 26 appointment. Claimant testified that she was not told on May 21 that she was covered by the insurance policy for the appointment and in fact was told to purchase her own insurance.

The manager and claimant met again on May 22. The manager had the necessary termination papers prepared for claimant to complete her work on that day. At the meeting claimant handed manager a statement to the effect that she would not voluntarily end her employment prior to May 29 in order to insure coverage for the dental appointment and to allow completion of an employment discrimination claim investigation. The manager refused to allow claimant to continue working through May 29. When claimant attempted to report for work on May 26, she was told she had been taken off the computer list and that her employe's card would not operate the lock to her work area.

■    Claimant assigns as error the following findings of fact by the Board:

" * * * (11) On May 20 or 21, the claimant was called to a conference room by the manager and told that her termination papers would be ready and she would receive her exit interview on May 22, 1981. (12) At that time it was mutually agreed that the claimant's employment would end on May 22, 1981. * * *"

Claimant contends that the finding that she and the manager mutually agreed on May 20 or 21 to a May 22 termination date is not supported by substantial evidence. ORS 183.482(8)(c). There was evidence that on May 12 the parties mutually agreed to a May 22 termination date contingent on insurance coverage for the dental appointment.[2] There was also evidence that on May 20 or 21 the

_____

[2] The manager testified as follows concerning the May 12 meeting in the conference room:

"Q Well now you've heard her [claimant's] testimony that she was under the impression at the time of her termination was going to be determined after you got back to her on the insurance business. Was that - was that true?

"A No. The termination had been settled in the conference room for the 22nd. I did get back with her about her insurance on the 20th. I said she was fully covered. She was covered through May 30th.

manager told claimant that she was insured until the end of May. The only contingency left open at the May 12 meeting which could have affected the May 22 termination date was then disposed of. Thus the Board could infer from the evidence that by May 21 the parties mutually agreed that claimant's employment would end on May 22.

■     Claimant also claims the Board erroneously interpreted OAR 471-30-038(2). *See* ORS 183.482(8). She argues that her separation from work was a discharge because she was willing to continue to work for Tektronix for an additional period of time (until May 29), but was not allowed to. As stated earlier, there was evidence that the parties had agreed that claimant would leave work on May 22 if she were covered by company insurance for the May 26 dental appointment. The Board concluded that "[t]he fact that she notified her manager on May 22, 1981, that she hadchanged her mind, does not change the nature of the work separation." *Accord Nickum v. Employment Division*, 21 Or App 490, 535 P2d 594 (1975), where claimant first resigned, then attempted to return for an additional two weeks to fulfill the customary two-weeks'-notice arrangement, and was told there was no work for her. Held, claimant voluntarily left work without good cause within the terms of ORS 657.176(2)(c). We do not find that the Board has erroneously interpreted OAR 471-30-038(2).

Affirmed.

---

"Q All right. So I guess that's where your testimony and Mickey's testimony differ. Your testimony is that that was a firm date of the 22nd she was going to quit on the 22nd?

"A Right. There was no ifs about the termination date. The question was learning whether or not her insurance would cover her for that one appointment on the 26th."