Argued and submitted January 28, reversed and remanded August 5, 1998

## EMPLOYMENT DEPARTMENT,
*Petitioner,*

*v.*

## Edward E. HEMKE
and Electro-Static Refinishers,
*Respondents.*

(96-AB-2481, 97-AB-127; CA A96297)

963 P2d 750

Michael C. Livingston, Assistant Attorney General, argued the cause for petitioner. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

James N. Esterkin argued the cause and filed the brief for respondent Edward E. Hemke.

No appearance for respondent Electro-Static Refinishers.

Before Warren, Presiding Judge, and Deits, Chief Judge,* and Landau, Judge.

DEITS, C. J.

---

* Deits, C. J., *vice* Leeson, J., resigned.

## DEITS, C. J.

Petitioner Employment Department seeks review of the order of the Employment Appeals Board (EAB) determining that claimant was entitled to unemployment benefits because he was discharged. Petitioner requests reversal of EAB's order and remand to consider whether claimant had good cause to leave work under ORS 657.176(2)(c). We reverse and remand.

Claimant was employed by a corporation, Electro-Static Refinishers, from September 1, 1986, through November 1, 1995. He was the sole shareholder of the corporation. On November 1, 1995, he sold all of his interest in the corporation because of increases in the workload and business costs. According to the terms of the sale agreement, claimant and the purchaser (employer) agreed that claimant would work part time for employer through January 31, 1996. The Board found that claimant did not expect to work for employer after that time. Claimant's compensation for the part-time work was part of the purchase price that he received for the sale of the corporation. Claimant worked for employer through January 31, 1996. Employer did not offer claimant any work after that time.

Claimant applied for and initially was denied unemployment benefits on the ground that he voluntarily left work without good cause. He sought review by EAB of the decision and a telephonic hearing was held. Claimant testified about the agreement regarding his employment:

"Q. And what was your relationship with the business after it was sold?

"A. I worked - I sold the business November 1, and I worked for no salary from November 1 to February 1 —

"Q. Now —

"A. — as a consultant.

"* * * * *

"Q. Were you an employee?

"A. Well, that's a - that's a point that I - I have a little difficulty understanding, myself.

"Q. Okay. Who was - who - were - was - were your work duties directed by anyone?

"A. Yes.

"Q. Who were they directed by?

"A. Booster [the purchaser].

"Q. And what did he tell you to do?

"A. He told me to do whatever he deemed necessary for me to do.

"* * * * *

"Q. What days and hours did you work generally?

"A. What days and hours?

"Q. Yeah.

"A. Ken will - will be able to confirm this, but I think the agreement was that I would work three days a week for them. I would work Tuesday, Wednesday, and Thursday of each week.

"Q. Now, when you talk about the - the agreement, was this part of a verbal agreement, or was this part of a written agreement?

"A. What agreement are you referring to?

"Q. That you would work as a - as a consultant, employee, whatever it was?

"A. I don't know if it was ever written. It may have been. I'm not sure. I can't - I don't know.

"Q. Was your continuing employment with the company a condition of the sale?

"A. No.

"Q. Okay. What happened? Now, you said you worked until February 1. What happened at that point?

"A. Then I was - then I was done. Then my - there was no longer a job there for me.

"Q. So, the agreement was that you would work - how long did you - did you agree to be in this consulting position?

"A. Just the amount of time that I spent in it, 'til February 1.

"Q. And so, as - so, it was your decision that it was February 1?

"A. It was a joint decision. I mean, it was - it was a - it was a part of the offer of - by the buyer, that would stay on for three months.

"Q. So, that was - that was part - so, it was part of the offer - the offer and acceptance of the sale?

"Q. Exactly."

Employer produced a copy of the agreement and testified that it provided that "[employer] agrees to employment with buyer as part-time employee through January 31, 1996."

EAB concluded that under ORS 657.176(2) and OAR 471-30-038(2),[1] claimant had been discharged. It noted employer's testimony that claimant was not asked to work as an employee after January 31, 1996, and concluded that "because there is no evidence that claimant could have continued to work for the employer, * * * the separation is best characterized as a discharge." EAB also concluded that the discharge was not related to misconduct connected with work and, accordingly, awarded claimant benefits.

The Employment Department argues that EAB erred in awarding unemployment benefits to claimant on the ground that he had been discharged. The Department contends that, in concluding that claimant had been discharged, EAB erroneously construed and applied ORS 657.176(2)(c), by ignoring both claimant's decision to sell the corporation and his agreement, as part of the sale, that his employment would terminate on January 31, 1996.

ORS 657.176(2) provides, in part:

"(2) An individual shall be disqualified from the receipt of benefits * * * if the authorized representative designated by the director finds that the individual:

"(a) Has been discharged for misconduct connected with work, [or]

---

[1] This rule has been renumbered as OAR 471-030-0038(3).

"\* \* \* \* \*

"(c)   Voluntarily left work without good cause[.]"

OAR 471-30-038(2) further defines the terms used in ORS 657.176(2):

"(2)   The distinction between voluntarily leaving and discharge is:

"(a)   If the employee could have continued to work for the same employer for an additional period of time the separation is a voluntary leaving of work;

"(b)   If the employee is willing to continue to work for the same employer for an additional period of time but is not allowed to do so by the employer the separation is a discharge."

In our recent decision, *Employment Dept. v. Shurin*, 154 Or App 352, 959 P2d 637 (1998), we explained our understanding of those provisions:

"Both as a matter of syntax and of common sense, the statutory scheme and its implementing regulations treat 'voluntarily leaving' work and 'discharge' as mutually exclusive concepts. We have consistently held that, where the employer and the employee have *'agreed to a mutually* acceptable date on which employment would terminate,' the termination should be treated as a 'voluntary leaving' and not as a 'discharge.' *Smith v. Employment Division*, 34 Or App 623, 627, 579 P2d 310 (1978). *See also J. R. Simplot Co. v. Employment Division*, 102 Or App 523, 528, 795 P2d 579 (1990); *Schmelzer v. Employment Div.*, 57 Or App 759, 646 P2d 650, *rev den* 293 Or 521 (1982)."

Here, as in *Shurin*, claimant agreed to a mutually acceptable termination date. The evidence is undisputed that the agreement stated that claimant's employment would be "through January 31, 1996." Claimant acknowledged that he agreed only to be bound to work for employer through January 31, 1996. Claimant could have kept his employment position had he decided not to sell his interest in the corporation. Accordingly, we conclude that EAB erred in determining that claimant had been discharged. Because EAB did not reach the issue of whether claimant had "good cause" under ORS

656.176(2)(c) for voluntarily leaving his employment, we remand to EAB to address that question.

Reversed and remanded.